**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CIVIL ACTION** |
| *ex rel.* **DONALD R. GALMINES, et al.,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **NOVARTIS PHARMACEUTICALS** | : | **No. 06-3213** |
| **CORPORATION** | : | |
| **Defendant.** | : | |

# M E M O R A N D U M

PRATTER, J.                                                                    NOVEMBER 4, 2013

Following the Court's partial grant of Novartis Pharmaceuticals Corporation's

("Novartis") Motion to Dismiss (Docket Nos. 62, 65 & 66, 68 & 69), Relator Donald Galmines

moves for reconsideration of the Court's dismissal of his claims under California, D.C.,

Louisiana, and Massachusetts law. Finding that it committed clear error by dismissing these

claims for lack of supplemental jurisdiction, the Court grants Mr. Galmines's Motion for

Reconsideration (Docket No. 77) in part, as to the Louisiana and Massachusetts claims, and

denies it in part, as to the California and D.C. claims, because while the Court has supplemental

jurisdiction over all the claims, the California and D.C. claims are barred by Mr. Galmines's

failure to meet those laws' "original source" requirements.


## I.  BACKGROUND

*Qui tam* Relator Donald Galmines, alleging that Novartis caused the submission of false

claims to government healthcare systems by wrongfully marketing its prescription drug Elidel,

has sued Novartis under the Federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and various

state false claims acts. On June 13, 2013, the Court granted in part and denied in part Novartis's

Second Motion to Dismiss. In particular, the Court dismissed Mr. Galmines's claims under California, D.C., Louisiana, and Massachusetts law. Agreeing with Novartis, the Court reasoned that those states' false claims statutes "indicate that a relator must file suit in state court." *United States ex rel. Galmines v. Novartis Pharm. Corp.*, No. 06-3213, 2013 WL 2649704, at *13 (E.D. Pa. June 13, 2013); *see* CAL. GOV'T CODE § 12652(c)(2) ("A complaint filed by a private person under this subdivision shall be filed in superior court . . . ."); D.C. CODE § 2-381.03(b)(2) ("A complaint filed by a qui tam plaintiff pursuant to this subsection shall be filed in the Superior Court . . . .") (emphasis added); LA. REV. STAT. ANN. § 46:439.1(A) ("A private person may institute a civil action in the courts of this state . . . ."); MASS. GEN. LAWS ch. 12, § 5C(2) (authorizing *qui tam* actions "in superior court"). Because "Mr. Galmines neither discusses these specific statutes nor contends that he has filed suit in the courts of the foregoing states," the Court dismissed the claims under those statutes with prejudice. *Galmines*, 2013 WL 2649704, at *14.

Twenty days later, Mr. Galmines moved for reconsideration of the dismissal of these state law claims. In response, Novartis contends that the Motion should not be granted because it is untimely and meritless.

## II. THE STATE LAW CLAIMS

### A

Mr. Galmines argues that the Court erred in holding the California, D.C., Louisiana, and Massachusetts statutes to be jurisdictional and to act, therefore, as bars to its exercise of jurisdiction over his claims under those statutes.

Upon further consideration, the Court agrees. Two federal statutes provide for supplemental jurisdiction over these state law claims. First, 28 U.S.C. § 1367 provides, in pertinent part, that

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Second, Congress, ostensibly concerned about the consolidation of false claims suits, has also specifically provided that "[t]he district courts shall have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under [the Federal False Claims Act]." 31 U.S.C. § 3732(b).

Because his claims under California, D.C., Louisiana, and Massachusetts law arise from the same transactions or occurrences as his federal action, Mr. Galmines argues, this Court has jurisdiction over them. Novartis, by contrast, argues that "the Court is not required to maintain Relator's state claims at this stage, particularly where those same states' legislatures have determined that claims brought under their respective state false claim statutes must be filed in state court." Novartis Br. at 6.

While a court's exercise of supplemental jurisdiction may be discretionary in some cases, *see* 28 U.S.C. § 1367(c), this Court dismissed the state claims at issue here on the mistaken reasoning that the claims *had* to be filed in state court—i.e., tantamount to holding that the Court simply lacked the power to exercise jurisdiction over them. The question must therefore be whether the Court properly has jurisdiction over these claims, for if it does, "justification" for its exercise here, even if in fact that jurisdiction is discretionary, "lies in considerations of judicial

economy, convenience and fairness to litigants." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

* * *

Section 1367(a) is a codification of

> principles of pendent and ancillary jurisdiction by which the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that "derive from a common nucleus of operative fact," such that "the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *Gibbs*, 383 U.S. [at] 725.

*City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164-65 (1997). As the language of the statute suggests, so long as Article III of the Constitution permits a court to exercise supplemental jurisdiction over a state law claim, § 1367 provides authorization (and, indeed, may even mandate the exercise of jurisdiction). *See New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1509 (3d Cir. 1996) ("[T]he language and legislative history of § 1367(a) support its extension to the limits that Article III permits.").

In *City of Chicago v. International College of Surgeons (ICS)*, the Supreme Court implicitly rejected an argument much like the one Novartis advances here, that the state statutes' language regarding filing in state court bars federal supplemental jurisdiction. In *ICS*, the City of Chicago had removed the case from state court to federal court, which had original jurisdiction over the International College of Surgeons' ("the ICS") federal question claims, but not its state law claims. 522 U.S. at 165. The ICS argued that the federal district court "was without jurisdiction over its actions because they contain state law claims that require on-the-record review of the Landmarks Commission's decisions," *id.* at 166, and "by raising [its claims] under the Illinois Administrative Review Law," the ICS had "thereby assur[ed] itself a state forum," *id.* at 167. But although the relevant provision of Illinois law established jurisdiction "in the

[Illinois] Circuit Courts," and provided that "an action to review a final administrative decision may be commenced in the Circuit Court of any county" fulfilling certain conditions, 735 ILL. COMP. STAT. 5/3-104, the Supreme Court did not read the Illinois statute's language as barring the federal court's supplemental jurisdiction. The *ICS* Court explained:

> There is nothing in the text of § 1367(a) that indicates an exception to supplemental jurisdiction for claims that require on-the-record review of a state or local administrative determination. Instead, the statute generally confers supplemental jurisdiction over "all other claims" in the same case or controversy as a federal question, without reference to the nature of review. Congress could of course establish an exception to supplemental jurisdiction for claims requiring deferential review of state administrative decisions, but the statute, as written, bears no such construction.

*Int'l Coll. of Surgeons*, 522 U.S. at 169. The Court therefore rejected the ICS's argument that "a claim involving deferential review of a local administrative decision is not a 'civil action' in the 'original jurisdiction' of the district courts," as well as its argument that "such a claim can never constitute a claim 'so related to claims . . . within such original jurisdiction that [it] form[s] part of the same case or controversy for purposes of supplemental jurisdiction." *Id.* at 168-69 (alterations in original). The unmistakable—and indeed, necessary—implication is that the Illinois statute's ostensible jurisdictional and venue requirements had no application whatsoever with regard to the presence of federal supplemental jurisdiction under 28 U.S.C. § 1367(a).

Of course, if § 1367(a) extends so far, 31 U.S.C. § 3732(b)'s mandate is even clearer. Section 3732(b) provides that federal "district courts shall have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under" the Federal False Claims Act. 31 U.S.C. § 3732(b).

This rule, that 28 U.S.C. § 1367(a) controls, rather than state law, is not merely an implication from *ICS*. Rather, although the *ICS* Court did not cite to *Railway Co. v. Whitton's*

*Administrator*, 80 U.S. (13 Wall.) 270 (1872), it clearly relied on a foundational principle found in that case. In *Whitton's Administrator*, the Supreme Court had instructed that a state right

> cannot be withdrawn from the cognizance of such Federal court [having jurisdiction over the parties] by any provision of State legislation that it shall only be enforced in a State court. The statutes of nearly every State provide for the institution of numerous suits, such as for partition, foreclosure, and the recovery of real property in particular courts and in the counties where the land is situated, yet it never has been pretended that limitations of this character could affect, in any respect, the jurisdiction of the Federal court over such suits where the citizenship of one of the parties was otherwise sufficient. Whenever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation.

80 U.S. (13 Wall.) at 285-86. This rule is a consequence of the exclusive power of Congress to control the jurisdiction of the federal courts and the Supremacy Clause implications of a state's suggestion that it might somehow (even indirectly) provide otherwise.

More recently, several courts have explicitly affirmed this principle. In *BNSF Railway v. O'Dea*, 572 F.3d 785 (9th Cir. 2009), for instance, the Ninth Circuit Court of Appeals explained:

> But, says O'Dea, BNSF could not file an original action in the district court because the appeal procedure set forth in Montana law declares that a petition for review "must be filed in the [state] district court for the county where the petitioner resides or has the petitioner's principal place of business or where the agency maintains its principal office." MONT. CODE ANN. § 2-4-702(2)(a). That means, says he, that original federal jurisdiction is precluded. We disagree. A state cannot confer rights upon private parties and require that litigation between those parties must be confined to the courts of the state itself. As our hyaline alembic regarding this part of the law put it more than twenty-five years ago, when we were faced with an assertion that state statutes precluded federal court jurisdiction:
>
> > In determining jurisdiction, district courts of the United States must look to the sources of their power, Article III of the United States Constitution and Congressional statutory grants of jurisdiction, not to the acts of state legislatures. However extensive their power to create and define substantive rights, the states have no power directly to enlarge or contract federal jurisdiction.

> *Duchek v. Jacobi*, 646 F.2d 415, 419 (9th Cir. 1981); *see also Marshall v. Marshall*, 547 U.S. 293, 312-14 (2006); *Ry. Co. v. Whitton's Adm'r*, 80 U.S. (13 Wall.) 270, 286 (1871); *Begay v. Kerr-McGee Corp.*, 682 F.2d 1311, 1315 (9th Cir. 1982).

*BNSF Ry.*, 572 F.3d at 788-89 (footnote omitted). Other courts of appeals, too, have held that "a state may not deprive a federal court of jurisdiction merely by declaring in a statute that it holds exclusive jurisdiction." *Superior Beverage Co. v. Schieffelin & Co.*, 448 F.3d 910, 917 (6th Cir. 2006); *see Grand Bahama Petrol. Co. v. Asiatic Petrol. Corp.*, 550 F.2d 1320, 1324 (2d Cir. 1977) ("Even if [the particular New York provision] may be described as affecting the district court's jurisdiction, New York may not place such a financial and procedural burden on a foreign corporation seeking to vindicate its right to bring a diversity action before the federal courts. . . ."); *Markham v. City of Newport News*, 292 F.2d 711, 716 (4th Cir. 1961) ("From all of these cases it is apparent that a court, in determining its own jurisdiction, must look to the constitution and laws of the sovereignty which created it. The laws of a state cannot enlarge or restrict the jurisdiction of the federal courts or those of any other state. It necessarily follows that whenever a state provides a substantive right and a remedy for its enforcement in a judicial proceeding in any state court, a judicial controversy involving the right may be adjudicated by a United States District Court if it has jurisdiction under the Constitution and laws of the United States." (citing, inter alia, *Whitton's Adm'r*, 80 U.S. (13 Wall.) 270)). Further, a number of district courts have refused to give preclusive effect to language in state statutes purporting to restrict suit to state courts, and most have relied on *Whitton's Administrator*.[1]

---

[1] *See, e.g.*, *TBK Partners, Ltd. v. W. Union Corp.*, 517 F. Supp. 380, 388 (S.D.N.Y. 1981) ("The objectors cite New York Business Corporation Law Section 623(h)(3) which confers on the Supreme Court for the judicial district wherein the corporation's offices are located 'exclusive' jurisdiction over appraisal proceedings. That is no more, however, than a venue provision designed to put an appraisal proceeding in one and only one judicial district per each company and does not purport to be a grant of "exclusive" state-court jurisdiction in the sense contended for by the objectors. A state-created claim, as a general matter 'cannot be withdrawn

Although it appears that the Third Circuit Court of Appeals has not had occasion to address this question squarely, by every indication it would reach the same conclusion. *See Allstate Ins. Co. v. Gammon*, 838 F.2d 73, 77 n.7 (3d Cir. 1988) ("We are aware that this statute, if it were interpreted to deny parties access to the United States District Court without their consent, might well run afoul of the Supremacy Clause, U.S. CONST. art. VI, cl. 2. However, we need not address this issue since we conclude that the statute was not intended to limit the jurisdiction of the United States District Court.").[2]

---

from the cognizance of such Federal Court by any provision of state legislation that it shall only be enforced in a State Court.'" (citations omitted) (citing *Whitton's Administrator*, 80 U.S. (13 Wall.) at 285)), *aff'd* 675 F.2d 456, 460 n.3 (2d Cir. 1982) ("We agree with the District Court that there would be substantial doubt as to the constitutionality of a state law purporting to preclude federal court diversity or pendent jurisdiction over a state-created claim. 'Whenever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation.'" *Railway Co. v. Whitton's Administrator*, 80 U.S. (13 Wall.) 270, 286 (1872).");  *Albert Trostel & Sons Co. v. Notz*, 536 F. Supp. 2d 969, 976-80 (E.D. Wis. 2008) ("Were the federal courts limited in their exercise of diversity and supplemental jurisdiction by state statutes assigning a state forum, then the exercise of that jurisdiction, as contemplated by Congress and the Framers of the Constitution, could be frustrated in a manner inconsistent with the pre-eminence of federal law." (citing *Whitton's Adm'r*, 80 U.S. (13 Wall.) at 286; *TBK Partners*, 517 F. Supp. at 388)), *aff'd*, 679 F.3d 627 (7th Cir. 2012)); *Mut. First, Inc. v. O'Charleys of Gulfport, Inc.*, 721 F. Supp. 281, 282 (S.D. Ala. 1989) ("The fact that *Alabama Code* §§ 35-9-80 through 35-9-88 provide specific procedural rules for the handling of cases brought pursuant to it in state court, does not limit a federal court's jurisdiction if the requisite elements of jurisdiction are met."); *Olson v. Bank of Am.*, No. 11-3710, 2012 WL 1660615, at *3 (D. Minn. Apr. 19, 2012) ("Plaintiffs also contend that because one of the properties is registered under Minnesota's Torrens statute the state court has exclusive jurisdiction over that property. This argument is wholly without merit and deserves no discussion."), *aff'd*, 518 F. App'x 496 (8th Cir. 2013); *Minor v. Albright*, No. 4493, 2001 WL 1516729, at *2 (N.D. Ill. Nov. 28, 2001) ("The [state statute] does state that actions 'shall be commenced in the circuit court of the county in which either the registered office or principal office of the corporation is located.' But this provision merely establishes the proper venue within the state court system. It does not attempt to create any form of exclusive state court jurisdiction. For that matter, our jurisdiction is prescribed by Congress, not the Illinois legislature." (citation omitted)).

[2] *See also, e.g.*, *Land Title & Trust Co. v. Asphalt Co. of Am.*, 127 F. 1, 18-19 (3d Cir. 1903) ("Any party who has a right to come into the Circuit Court of the United States, finds a court clothed with plenary power to do justice according to law, as existing in the state wherein such

Of course, how a federal court characterizes such state statutes makes little difference—i.e., state statues cannot restrict federal court jurisdiction by specifying state venue as opposed to by declaring jurisdiction exclusive in certain of its courts, for state statutes can hardly do indirectly what they cannot do directly. The only difference resulting from characterization might be holding that the Supremacy Clause defeats a particular part of a state statute, as opposed to simply giving that portion of the state statute no effect.

But no matter—avoidance is the best course here. The Court declines to interpret the California, D.C., Louisiana, and Massachusetts statutes in question as intended to deprive any otherwise competent federal court of jurisdiction. *Cf. Allstate Ins. Co*, 838 F.2d at 77 ("The issue before this Court is whether the term 'any court of competent jurisdiction of this

---

Circuit Court is held. Such courts, therefore, administer the law of that state, and it would be doing violence to our dual scheme of government, if it could be predicated of a right created by and existing under the laws of a state, that it could not be asserted and enforced in the Circuit Court of the United States, in the exercise of its concurrent jurisdiction as prescribed and limited by the Constitution and judiciary act. The Constitution imposes no limitation upon the class of cases involving controversies between citizens of different states, to which the judicial power of the United States may be extended; and Congress may therefore lawfully provide for bringing, at the option of either of the parties, all such controversies within the jurisdiction of the federal judiciary." (dictum)); *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1109 (3d Cir. 1995) (Nygaard, J., concurring in part and concurring in the judgment) ("It does not follow, however, that a state may by statutory or decisional law restrict the subject matter jurisdiction of the federal courts. It is axiomatic that, because federal subject matter jurisdiction can be conferred or withdrawn only by Congress, a federal court must look only to federal, not state, law to determine whether that jurisdiction exists, even when the substantive right at issue is a creature of state law. That a state simply has no power to divest a federal court of its constitutionally or congressionally conferred subject matter jurisdiction has been settled law for nearly a century." (citations omitted)); *cf. Van Doren v. Pa. R.R.*, 93 F. 260, 265-66 (3d Cir. 1899) ("It is true that the New Jersey statute has no extraterritorial operation and does not create a right to maintain an action in that state to recover damages for death resulting from personal injury caused by negligence in Pennsylvania. The right of action necessarily depends in such a case upon the lex loci of the injury, and not the lex fori. On the other hand, the Pennsylvania statute could not confer jurisdiction on either the state or federal courts in New Jersey. That statute, however, created a substantial right capable of enforcement in New Jersey by any court otherwise possessing competent jurisdiction, unless such enforcement would conflict with the policy of that state.").

Commonwealth', as used in the Act, was intended to include the United States District Court situated in Pennsylvania. We conclude that it was."). It is of no matter that these state law claims fall under the Court's supplemental jurisdiction as opposed to its diversity jurisdiction—they fall under federal jurisdiction, as authorized by Article III, 28 U.S.C. § 1367, and 31 U.S.C. § 3732(b), all the same and, further, finding jurisdiction over them is consistent with the exercise of such jurisdiction by other federal courts. *See generally, e.g.*, *New York v. Amgen Inc.*, 652 F.3d 103 (1st Cir. 2011); *United States v. Sequel Contractors, Inc.*, 402 F. Supp. 2d 1142 (C.D. Cal. 2005). And even if these statutes *were* designed to deprive the federal courts of jurisdiction, that intent would have no effect. Thus, the Court holds that it should have found supplemental jurisdiction over Mr. Galmines's California, D.C., Louisiana, and Massachusetts claims.[3]

## B

That this Court has supplemental jurisdiction over the California, D.C., Louisiana, and Massachusetts claims does not end this reconsideration, however. Novartis has also argued that Mr. Galmines is not an "original source" under the California and District of Columbia statutes. *See* Novartis Br. at 9 n.9 (Docket No. 82); Novartis First Mot. Dismiss at 47 n.32 (Docket No.

---

[3] Despite the parties' suggestions to the contrary, *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), is not relevant to this inquiry. *See, e.g.*, *Grand Bahama Petrol. Co.*, 550 F.2d at 1325 ("This basic principle of Federalism is not affected by the Supreme Court's decision in [*Erie*] and the doctrine announced therein."); *Markham*, 292 F.2d at 718 ("The Erie doctrine does not extend to matters of jurisdiction or, generally, to matters of procedure. Its basic philosophy is that a federal court exercising its diversity jurisdiction to adjudicate rights created by the state sits as another court of that state sits should reach the same result as the state courts would reach in deciding the identical issue. It is conformity in result which is required. . . . To the extent it may be said that such cases require a federal court to refrain from exercising its jurisdiction, it is a rational development of the Erie doctrine and a requisite one if the result of the litigation in the federal court is to be the same as in the state courts.").

43). Indeed, the Court granted Novartis's Motion to Dismiss Mr. Galmines's claims under the

Nevada statute because

> Nevada's false claims statute appears to codify the original-source rule adopted by the Second and Ninth Circuit Courts of Appeal. *See* NEV. REV. STAT. § 357.100(2)(c) (defining an original source as a person whose "information provided the basis or caused the making of the investigation, hearing, audit or report that led to the public disclosure").[4]

*Galmines*, 2013 WL 2649704, at *14.[5]

The California and D.C. statutes in effect during the relevant time period appear to have

had the same requirement. Although California Government Code § 12652 now provides that an

"original source" is someone who, "[p]rior to a public disclosure," either "has voluntarily

disclosed to the state or political subdivision the information on which allegations or transactions

---

[4] The Second and Ninth Circuit Courts of Appeals are on one side of a circuit split over the requirements of the federal "original source" rule. *See Galmines*, 2013 WL 2649704, at *6-9 (this Court's decision to follow other courts of appeals' original source rule, rather than that of the Second and Ninth Circuit Courts of Appeals); *United States ex rel. Dick v. Long Island Lighting Co.*, 912 F.2d 13, 16 (2d Cir. 1990) ("A close textual analysis combined with a review of the legislative history convinces us that under [the Federal False Claims Act] there is an additional requirement that a *qui tam* plaintiff must meet in order to be considered an 'original source,' namely, a plaintiff also must have directly or indirectly been a source to the entity that publicly disclosed the allegations on which a suit is based."); *Wang v. FMC Corp.*, 975 F.2d 1412, 1419-20 (9th Cir. 1992) (same requirement). In any case, the Nevada statute's then-operative language, *see infra* note 5, like that of the then-operative California and D.C. statutes, required more than this Court has required under the federal "original source" rule, as discussed below.

[5] Nevada appears to have amended § 357.100 earlier this year to remove the requirement that an "original source" be someone "[w]hose information provided the basis or caused the making of the investigation, hearing, audit or report that led to the public disclosure," NEV. REV. STAT. § 357.100(2)(c), by allowing an original source to be *either* someone "[w]ho voluntarily discloses to the State or a political subdivision the information on which the allegations in an action for a false claim are based before the public disclosure of the information," *or* someone "[w]ho has knowledge of information that is independent of and materially adds to the publicly disclosed allegations or transactions and who voluntarily provides such information to the State or political subdivision before bringing an action for a false claim based on the information," Act of May 28, 2013, ch. 245, sec. 4, 2013 Nev. Legis. Serv. 245. But because the amendment does not appear to be retroactive, the legislative change is of no help to Mr. Galmines here.

in a claim are based" or "[h]as knowledge that is independent of, and materially adds to, the publicly disclosed allegations or transactions, and has voluntarily provided the information to the state or political subdivision before filing an action under this section," CAL. GOV'T CODE § 12652(d)(3)(C)(i), (ii), the version in effect before 2010 required that an original source be someone "whose information provided the basis or catalyst for the investigation, hearing, audit, or report that led to the public disclosure," CAL. GOV'T CODE § 12652(d)(3)(B) (2009).

The same problem arises with respect to Mr. Galmines's D.C. law claims. *Compare* D.C. CODE § 2-381.03(c-1)(2)(C) (providing that the court shall not dismiss an action if it "is brought by a qui tam plaintiff and the qui tam plaintiff is an *original source* of the information" (emphasis added)) *and id.* § 2-381.01(10)(A), (B) (defining an "original source" as an individual who either "[h]as voluntarily disclosed to the District, before a public disclosure . . . , the information on which allegations or transactions in a claim are based; or [h]as knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the District before filing an action under this section"), *with* D.C. CODE § 2-308.15(c)(2)(B) (2010) ("[T]he term 'original source' means an individual who has direct and independent knowledge of the information on which the allegations are based, who voluntarily provided the information to the District before filing an action based on that information, and whose information provided the basis or catalyst for the investigation, report, hearing, audit, or media disclosure which led to the public disclosure . . . .").

As the Court previously ruled with regard to Mr. Galmines's Nevada claim, Mr. Galmines does not address these features of the California and D.C. laws nor dispute that he cannot qualify as an original source under California's or D.C.'s then-operative definitions. The

Court will not, therefore, reconsider and reinstate Mr. Galmines's California and D.C. law–based claims.

*   *   *

For the foregoing reasons, upon reconsideration, the Court should reinstate Mr. Galmines's claims based on Louisiana and Massachusetts law, provided that his Motion for Reconsideration otherwise passes muster—the issue to which the Court must now turn.

### III.  THE MOTION FOR RECONSIDERATION

Before the Court can reinstate Mr. Galmines's Louisiana and Massachusetts claims, it must address Novartis's arguments as to why this Court should deny his Motion for Reconsideration and not address the merits of Mr. Galmines's contention that this Court has supplemental jurisdiction over those claims. Novartis contends, first, that the Motion is untimely under Local Rule 7.1(g), which requires motions for reconsideration to be filed within 14 days of the order challenged, E.D. PA. LOCAL R. CIV. P. 7.1(g); second, that Mr. Galmines waived his arguments by failing to raise them previously; and third, that Relator's arguments do not merit reconsideration because Relator cannot "justify reconsideration based on clear error of law and manifest injustice," Novartis Br. at 5.

### A

Novartis argues that Mr. Galmines violated Local Rule 7.1(g)'s mandate that a motion for reconsideration be filed within 14 days of entry of the order and that, because the Motion is untimely, it should be dismissed. Although Mr. Galmines should have complied with Local Rule 7.1(g), its 14-day limit is not jurisdictional. *See Wiest v. Lynch*, 710 F.3d 121, 127 (3d Cir. 2013) ("If the time limit contained within Rule 59(e) is not jurisdictional, we cannot see how the time

limit contained within Local Rule 7.1(g) is jurisdictional.").[6] Still, Mr. Galmines must justify his deviation from Local Rule 7.1(g) so that the Court can evaluate whether "(1) it has a sound rationale for" "depart[ing] from the strictures of its own local procedural rules . . . and (2) so doing does not unfairly prejudice a party who has relied on the local rule to his detriment." *United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 215 (3d Cir. 2000).

Here, although Novartis argues that Mr. Galmines's Motion is untimely, Novartis suggests nothing in the way of prejudice from the additional six days Mr. Galmines took to file his Motion. *See* Novartis Br. at 2-3. Moreover, the Court has a sound rationale for departing from Rule 7.1(g): correction of a clear legal error, as discussed below. Therefore, while not endorsing delayed filings, the Court concludes that it would be an abuse of the Court's exercise of its discretion to refuse to consider meritorious arguments because of the passage of less than one week where no harm from the passage of such time has befallen Novartis.

## B

Novartis also argues that Mr. Galmines waived his arguments for reconsideration by not raising them previously. It is true that the parties did not brief the issue currently before the Court—the viability of this Court's jurisdiction over state law claims—in any detail prior to this motion practice; the primary reference was in Novartis's *first* Motion to Dismiss, in a footnote. *See* Novartis First Mot. Dismiss at 50 n.36. Thus, Novartis contends, it "squarely raised the California, D.C., Louisiana and Massachusetts statutory requirements about which Relator

---

[6] There is also no reason to consider whether Mr. Galmines's Motion is untimely under Federal Rule of Civil Procedure 59(e) because he filed his Motion 20 days after the Court issued its opinion. *See Wiest*, 710 F.3d at 127.

now—over two years later—seeks reconsideration," but "Relator failed even to reference the state statutory provisions at the heart of this motion for reconsideration." Novartis Br. at 3-4. However, Novartis's very next statement reveals the problem with this assertion: "Instead, in a single paragraph in a 68-page opposition brief, Relator merely cited 28 U.S.C. § 1367, listed its exceptions and concluded that '[a]s such, supplemental jurisdiction over these claims is proper.'" *Id.* at 4 (quoting Galmines First Mot. Dismiss Opp. at 67-68 (Docket No. 45)). And indeed, the Court's holding that Mr. Galmines could not pursue his California, D.C., Louisiana, and Massachusetts claims because it lacked jurisdiction over them was clear error precisely because the Court does have supplemental jurisdiction over such claims. While Mr. Galmines would have better served both parties and the Court had he fleshed out his arguments in greater detail at that earlier stage—*quod erat demonstrandum*—he did not waive the argument that in fact allows him to prevail here—namely, that this Court has supplemental jurisdiction over the California, D.C., Louisiana, and Massachusetts claims (though, as discussed, the California and D.C. claims fail because Mr. Galmines was not an original source).

Whether or not, as a matter of law, Mr. Galmines must base his motion on arguments previously raised but overlooked by the Court, *see* Novartis Br. at 5, he has done just that by asserting that this Court has always had supplemental jurisdiction over his state law claims. *See, e.g.*, *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677-78 (3d Cir. 1999) ("In an effort to sustain the District Court's decision, LouAnn argues that the District Court was not required to take cognizance of Jack-Mack's date of incorporation because Jack-Mack failed to proffer its certificate of incorporation until it filed its motion for reconsideration. We do not regard Jack-Mack's failure to raise the issue of its subsequent incorporation during the contempt proceedings to be fatal to its defense in this case. . . . [T]he District Court was aware at the time

of the contempt hearing[] that Jack-Mack did not come on the scene until its purchase of the restaurant in April 1997 . . . .").

C

Finally, Novartis argues that Mr. Galmines cannot "justify reconsideration based on clear error of law and manifest injustice." Novartis Br. at 5. In addition to arguing that the Court's dismissal of Mr. Galmines's state law claims was not clear error, Novartis contends that Mr. Galmines "also fails to demonstrate 'manifest injustice' to the states or to himself." *Id.* at 8.

As the Third Circuit Court of Appeals has explained,

> "The purpose of a motion for reconsideration," we have held, "is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact *or* to prevent manifest injustice. See *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).

*Max's Seafood Cafe*, 176 F.3d at 677 (emphasis added). As the *Max's Seafood Cafe* Court's language reads, the third prong is *disjunctive*, not conjunctive, as Novartis posits. And indeed, that Court's application of the rule confirms reading the requirement as disjunctive. The Court asked, specifically, "whether holding [the defendant] in contempt resulted in a clear error of law or fact *or* resulted in a manifest injustice," and closed its discussion of the issue by addressing only the first of the disjunctive options and finding that "the force of Jack-Mack's argument that it may not be held for Miraglia's acts and statements *is clear*." 176 F.3d at 678 (emphases added). The Court did not then go on to ask whether the clearly erroneous ruling had resulted in a manifest injustice, as well. Hence, the single task is to consider whether there is a need to correct a clear error or to prevent manifest injustice.

Here, for the reasons discussed above, the Court committed clear error in dismissing Mr. Galmines's California, D.C., Louisiana, and Massachusetts claims for lack of supplemental jurisdiction. This error provides solid ground for granting at least a portion of the reconsideration Mr. Galmines seeks.

## IV

For the foregoing reasons, the Court will grant Mr. Galmines's Motion for Partial Reconsideration in part and deny it in part. Specifically, the Louisiana and Massachusetts claims are reinstated as falling within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 and 31 U.S.C. § 3732(b), while the California and D.C. claims, though generally within the Court's supplemental jurisdiction, fail under those statutes' "original source" rules.

An Order consistent with this Memorandum follows.

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
United States District Judge